# UNITED STATES DISTRICT COURT
# FOR THE
# MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| ROBERT C. COURBOIN, | : | Civil Action No. 8:13-cv-3109-T30-TGW |
| | : | |
| PLAINTIFF, | : | |
| | : | |
| V. | : | |
| | : | |
| CANDACE SCOTT, DENISE WENNOGLE, SCOTT AND DALY, LLC, CANDACE SCOTT, LLC, JAMES JENSEN, LAUFER, DALENDA, CADICINA, JENSEN AND BOYD, LLC, KALMAN BARSON, BARSON GROUP, ARTHUR J. SMITH, ARTHUR J. SMITH APPRAISALS, LLC, | : | |
| | : | |
| DEFENDANTS. | : | |

**DEFENDANTS' CANDACE SCOTT, DENISE WENNOGLE, SCOTT & DALY, LLC, AND CANDACE SCOTT, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

- 1 -

Defendants, Candace R. Scott, Esq., Denise A. Wennogle, Esq., Scott & Daly, LLC, and Candace Scott, LLC ("defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(2)-(3), move to dismiss this action for lack of personal jurisdiction and improper venue, and in support thereof state as follows:

## **INTRODUCTION**

The moving defendants are New Jersey attorneys who represented the ex-wife of plaintiff, Robert C. Courboin ("plaintiff" or "Courboin"), a resident of New Jersey, in her divorce proceeding from plaintiff in the New Jersey Superior Court. The only connection this case has to Florida is the unilateral activity of the plaintiff who moved to Florida during the divorce proceeding. Even if the requirements of the Florida long-arm statute could be met (and they cannot), this case falls decidedly short of the minimum contacts necessary to satisfy the Due Process Clause of the Fourteenth Amendment. Indeed, this case is a textbook example of the holding in Hanson v. Denckla, a case taught in every first year civil procedure course, that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." 357 U.S. 235, 253 (1958). Rarely will a case from the Supreme Court of the United States instruct dismissal based on a nearly identical factual scenario. This is that case.

By way of background, this action is the latest in a series of actions filed by plaintiff against defendants (and many others, such as the Judges of the New Jersey Superior Court, Governor Christie and the entire New Jersey State Bar) due to plaintiff's unhappiness with the outcome of his divorce. Plaintiff's first action filed in New Jersey alleged that the defendants tried to extort him. His next action filed in Florida claimed that the entire New Jersey legal system is corrupt and should be investigated. Both of these actions were dismissed with

2

prejudice. This latest action now claims that defendants are part of a "criminal conspiracy" that has harmed not only plaintiff but all of "the citizens of Morris County, New Jersey," and defendants should therefore be subject to suit in Florida under Federal RICO statutes and the Sherman Act. Plaintiff's claims have already been adjudicated as meritless by the New Jersey and Florida courts; the present motion, however, seeks dismissal on an even more fundamental basis: this Court lacks personal jurisdiction over the defendants. Defendants have no substantial contacts with Florida and this action has nothing to do with acts or omissions in Florida. Even if the circumstances were otherwise, a Florida venue is wholly improper for this action. Accordingly, the motion to dismiss is due to be granted.

## STATEMENT OF FACTS

Defendant, Candace R. Scott, Esq., is a New Jersey attorney who has practiced solely in New Jersey since her admission to the bar in 1976. See Declaration of Candace R. Scott, Esq., ("Scott Declaration") submitted herewith as Exhibit 1, at ¶ 2. Ms. Scott's only connection to plaintiff was through her representation of plaintiff's ex-wife in her divorce proceedings from him. Id. at ¶¶ 4, 5, 6. The Courboins divorced in New Jersey, and that matter concluded in 2011. Ms. Scott is not admitted to practice law in the State of Florida, has no offices or employees in Florida, and does not advertise her legal services in Florida. Id. at ¶¶ 2, 3. Moreover, Ms. Scott resides in New Jersey, owns no real property in Florida, has no assets in Florida, and pays no taxes in Florida. Id. Candace Scott, LLC is the business entity through which Ms. Scott engages in the foregoing activities in the State of New Jersey. Id. at ¶ 2.

The same is true of co-defendant, Denise A. Wennogle, Esq. Ms. Wennogle was previously employed as Ms. Scott's associate. See Declaration of Denise A. Wennogle, Esq., ("Wennogle Declaration") submitted herewith as Exhibit 2, at ¶ 4. During this time, Ms.

3

Wennogle assisted Ms. Scott with the representation of Mrs. Courboin.  Id.  Similar to Ms. Scott, Ms. Wennogle resides in New Jersey, practices only in New Jersey, is not licensed in Florida, has no offices or employees in Florida, and does not advertise her legal services in Florida.  Id. at ¶¶ 2, 3.  She also owns no real property in Florida, has no assets in Florida and pays no taxes in Florida.  Id.  Neither Ms. Wennogle nor Ms. Scott has ever represented Mr. Courboin.  Scott & Daly, LLC is the business entity through which Ms. Scott and Ms. Wennogle formerly engaged in the forgoing activities in the State of New Jersey.  Id. at ¶ 4.

Mr. Courboin was unhappy with the outcome of his divorce and began a campaign of harassment against anyone associated with the result.  Plaintiff addressed a letter to the Honorable James M. DeMarzo, J.S.C., of the New Jersey Superior Court as "Fat Corrupt James DeMarzo" and declared a "jihad" on the court.  See Declaration of David P. Skand, Esq. ("Skand Declaration"), submitted herewith as Exhibit 3, at Exhibit A.  Plaintiff advised Judge DeMarzo that if he "bump[s] into you outside of NJ, you'll make little girl noises as you look for another judge's dress to hide under."  Id.  This letter and other examples are attached to the Skand Declaration at Exhibit A.

As a result, the New Jersey Superior Court entered an order on February 24, 2012 directing plaintiff to cease and desist from "filing or writing any contemptuous and/or threatening correspondence . . . to the Honorable James M. DeMarzo, J.S.C., plaintiff's attorney, Candace Scott, Esq., or any other attorneys in the within litigation."  Id. at Exhibit B.  On the day prior, however, plaintiff filed suit against Ms. Scott and Ms. Wennogle in New Jersey.  Id. at Exhibit C.  Among his other groundless assertions, plaintiff claimed that defendants had "[c]ommitted perjury on over 100 occasions during the divorce proceedings between Robert and Jeanne Courboin."  Id., at Exhibit C, page 1.  Plaintiff complained that, "[t]his illegal behavior

4

caused a tremendous amount of pain and anguish to me," and "added at least a year and thousands of dollars to the proceeding." Id. He further alleged that this was a "criminal offense," that it had damaged relations with his son, and that defendants "stole over $100,000 from his mother." Id. at pp. 1-2. Plaintiff also asserted that he had been "pushed into considering violence via tire iron." Id. at p. 2.

Then on May 8, 2012, plaintiff filed an action against the New Jersey State Bar Association, the Members of the Bar, the Judges and Governor of New Jersey in the United States District Court for the Middle District of Florida. Id. at Exhibit D. In lieu of filing an answer, defendants moved to dismiss the New Jersey action with prejudice, and that motion was granted on June 19, 2012. Id., at Exhibit E. Because plaintiff ignored the New Jersey Superior Court's February 24, 2012 order, and continued his contemptuous and harassing behavior, on July 5, 2012, a Warrant and Detainer was issued for his arrest. A copy of that Arrest Warrant is attached to the Skand Declaration as Exhibit F.

The Florida action—which also alleged RICO claims—was then dismissed with prejudice by Order dated January 14, 2013. Id., at Exhibit G. On April 24, 2013, plaintiff filed another suit against these defendants in this Court. Id., at Exhibit H. In that case, plaintiff filed a motion requesting that defendants be compelled to "post a Bond." Id., at Exhibit I. In his motion, plaintiff states that "[v]irtually every illegal act that I accuse [defendants] of was done from within a New Jersey Court." Id. That case was dismissed on November 8, 2013 for lack of prosecution. Id., at Exhibit J. This action was filed on December 11, 2013. Id., at Exhibit K.

In this action, plaintiff alleges and "accuses" that he will prove that defendants "routinely engage as associates-in-fact and illegally remove thousands of dollars from the citizens of New Jersey, in violation of the RICO Act." Complaint at page 1, ¶ 1. In addition to RICO violations,

plaintiff alleges that defendants are "against state laws, stealing from the same people who come to them at a time on need [sic]." Id. Plaintiff avers that these accusations are "also covered by the Sherman Act of 1890." Id. Plaintiff complains that "the named attorneys, Scott and all firms in her control and employ, and Jensen, and all the firms in his control and employ, routinely overbill by using gigantic form interrogatories . . . ." Id., at page 2, ¶ 1.

For example, plaintiff alleges that, "[i]nterrogatories sent by ex's attorney, Candace Scott, 108 questions, took [him] 10-15 hours to answer." Id., at page 2, ¶2. Plaintiff further states that his attorney at the time, Jim Jensen "charged [him] for between 3 and 3.6 hours ($975 to $1140 [sic]) to 'go over' my answers and shorten them." Id. Plaintiff complains that none of these interrogatories was ever used at trial. Id., at page 2, ¶¶ 2 and 3. Plaintiff alleges that the "attorney-chosen experts are routinely stealing from their clients." Id., at page 2, ¶ 4. Plaintiff states that, "whether it's going to the attorney, which I am sure of and will find out, or pocketed by the 'expert,' it's definitely RICO related." Id.

Plaintiff believes that not only did defendants "steal" from him, he "firmly believe[s] that more money is stolen from the citizens of Morris County, New Jersey, from within the walls of the Superior Court, that we, the citizens pay for, by the attorneys 'representing' us, than by all the criminal activity in the county combined." Id., at page 3, ¶1.

In lieu of an *ad damnum* clause, plaintiff summarizes his damages and request for relief on page 6 of the Complaint:

> 1. I want the stolen $200,000 returned, three-fold.
> 2. I want the entire Civil Law component of NJ Law looked at for anti-trust [sic] acts and criminal proceeding brought against any instances found which resemble these charges.
> 3. I want to be paid for my time fighting these thieves.
> 4. I demand damages under the Sherman Act, which doesn't limit me to "treble damages".

> 5. I want a failsafe method devised to protect NJ consumers in the future.
> 6. This could not have happed without the direct or indirect knowledge of NJ Superior Court Judges DeMarzo, Rand and Ramsey, Morris County venue. I want this investigated.

Id., at page 6. In sum, all of plaintiff's allegations are directed against parties who live and work in New Jersey with respect to conduct that occurred in New Jersey. The alleged victims are New Jersey residents. None of the allegations refers or relates to any conduct in Florida.

## LEGAL ARGUMENT

### THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE MOVING DEFENDANTS AND SHOULD GRANT DEFENDANTS' MOTION TO DISMISS

The only connection between any fact or allegation contained in plaintiff's Complaint and the State of Florida is Mr. Courboin's unilateral decision to move to the State of Florida during the pendency of the New Jersey divorce proceeding. None of plaintiff's allegations or his requests for relief affects or pertains to any citizen or entity located in the State of Florida, other than plaintiff himself. As much as plaintiff's complaint fails to state a claim against any of the defendants, it similarly fails to demonstrate or even allege any facts that could form a basis for this Court to assert personal jurisdiction over these defendants.

A court must dismiss an action against a defendant over which it has no personal jurisdiction. Verizon Trademark Services v. Producers, Inc., 810 F. Supp. 2d 1321, 1323 (M.D. Fla. 2011). The determination of whether the Court has personal jurisdiction over a nonresident defendant requires a two-part analysis. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996); Cable-Home Communication Corp. v. Network Products, Inc., 902 F.2d 829, 855 (11th Cir. 1990).

7

First, the Court examines the jurisdictional issue under Florida's long-arm statute. Sculptchair, 94 F.3d at 626. "The reach of the Florida long-arm statute is a question of Florida law." Jackson-Bear Group, Inc. v. Amirjazil, 2011 WL 1232985, at *2 (M.D. Fla. 2011) (*citing* United Tech. Corp v. Mazer, 556 F.3d, 1260, 1274 (11th Cir. 2009)). It is to be strictly construed. Oriental Imports and Exports, Inc. v. Maduro and Curiel's Bank, N.V., 701 F.2d, 889, 890 (11th Cir. 1983). Florida's long-arm statute may confer both general and specific jurisdiction, the former being "more difficult" to show based on substantial activity unrelated to the cause of action. Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2002). Unlike general jurisdiction, in order to obtain specific jurisdiction over a nonresident defendant, there must be a showing of "connexity" (i.e., a causal connection) between the defendant's contacts and the cause of action. See id.

Second, if the Court finds the long-arm statute is satisfied, then the Court must determine whether sufficient minimum contacts exist between the defendants and the forum state such that jurisdiction over the defendants comports with "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Sculptchair, 94 F.3d at 626 (*quoting* International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).[1] Invoking the Court's jurisdiction over a nonresident defendant is only permitted if the defendant "purposefully avails itself of the privilege of conducting activities

---

[1] Plaintiff sued defendants for alleged violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") statutes and possibly, the Sherman Act. 18 U.S.C. § 1965(a), titled "Venue and Process," states:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district *in which such person resides, is found, has an agent, or transacts his affairs*. 18 U.S.C. § 1965(a)(emphasis added).

within the forum State, thus invoking the benefits and protections of its laws." Hanson, 357 U.S. at 253.

The plaintiff bears the initial burden. If the plaintiff establishes a *prima facie* case of personal jurisdiction through the allegations of his complaint, the defendant may challenge such allegations through affidavits, shifting the burden back to the plaintiff to prove jurisdiction. Sculptchair, 94 F.3d, at 627 (*quoting* Jet Charter Serv., Inc. v. Coeck, 907 F.2d 1110, 1112 (11th Cir. 1990)). If the defendant sustains its burden, plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.

**A. Defendants' Motion Should be Granted Because Plaintiff Has Not Satisfied His Initial Burden of Alleging Specific Jurisdictional Facts Required To Satisfy Florida's Long-Arm Statute.**

A complaint against an out-of-state defendant must allege a sufficient basis to exercise jurisdiction under the Florida long-arm statute, as it is incumbent upon the plaintiff to make the grounds for jurisdiction appear. Venetian Salami Co. v. J.S. Parthenais, 554 So. 2d 499, 502 (Fla. 1989); Hyco Manufacturing Co. v. Rotex International Corp., 355 So. 2d, 471, 473 (Fla. 3d DCA 1978) (reversing the lower court denial of motion to dismiss). A *prima facie* case is established only if the plaintiff alleges sufficient jurisdictional facts to withstand a motion for a directed verdict or judgment as a matter of law. PVC Windoors, Inc. v. Babbitbay Beach Construction, N.V., 598 F.3d 802, 810 (11th Cir. 2010); see also Future Technology Today, Inc. v. OSF Healthcare Systems, 218 F.3d 1247, 1249 (11th Cir. 2000).

Here, plaintiff alleges no jurisdictional facts whatsoever. None of the alleged acts that have supposedly aggrieved plaintiff occurred within the State of Florida nor do they have any connection to Florida. All of the events and/or acts that plaintiff describes in his complaint

occurred in New Jersey during his divorce. The divorce was adjudicated entirely in New Jersey. Put simply, plaintiff fails to establish any contacts between defendants and Florida, thus plaintiff failed to establish a basis for this Court to assert jurisdiction over defendants in this matter. Plaintiff's complaint is "devoid of any factual allegations establishing personal jurisdiction" over defendants. Homes Design Services, Inc. v. David Weekly Homes, LLC, 2007 WL 1080001, at *2 (M.D. Fla. April 9, 2007); Mazer, 556 F.3d at 1274; accord Henderson v. Elias, 56 So. 3d, 86, 90 (4th DCA 2011). On that basis alone, the complaint should be dismissed.

**B.     Even If Plaintiff Had Met The First Hurdle By Pleading Sufficient Jurisdictional Facts, The Record Evidence Plainly Shows That Exercising Personal Jurisdiction Over These Defendants Is Improper.**

**1.     Plaintiff Has Not Established General Jurisdiction Over Defendants.**

General jurisdiction, under Florida's long-arm statute, does not exist over these defendants because they are not "engaged in substantial and not isolated activity" in Florida pursuant to section 48.193(2) of the Florida Statutes. While general jurisdiction under the Florida long-arm statute does not require a causal connection between the defendants' conduct and Florida, it does demand a showing of substantial general business contacts with the forum state. Frazer v. Smith, 594 F.3d 843, 847 (11th Cir. 2010); Carib-USA Shiplines Bahamas, Ltd. v. Dorsett, 935 So. 2d 1272, 1275 (Fla. 4th DCA 2006). "General jurisdiction requires far more wide-ranging contacts with the forum state than specific jurisdiction, and it is thus more difficult to establish." Kanale v. Rubin, 20 So.3d 463, 466 (Fla. 2d DCA 2009).

Here, the complaint does not allege a single contact by defendants with Florida, much less anything on the order of what is necessary to establish general jurisdiction. Defendants do not reside in Florida. See Scott Declaration at ¶ 2; Wennogle Declaration at ¶ 2. Defendants do not conduct business in Florida. See Scott Declaration at ¶¶ 2, 3; Wennogle Declaration at ¶ 3.

Defendants do not have offices in Florida; they do not pay taxes in Florida; they do not have clients in Florida; they do not own property nor do they have assets in Florida. Id. In fact, defendants do not have any contact with the State of Florida such that they would be amenable to the general jurisdiction of courts in this State.

Even if the allegations of the complaint could pass muster under the Florida long-arm statute—and they cannot—the exercise of general jurisdiction over these defendants would not comport with the Due Process Clause of the Fourteenth Amendment. It is not enough that a foreign person (or entity) have affiliations with the forum state that are "continuous and systemic," "it is whether that [defendant's] 'affiliations with the State are so continuous and systemic as to render it *essentially at home* in the forum State.'" *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 761 (2014) (*quoting* Goodyear Dunlop Tires Oper., S.A. v. Brown, __ U.S. __, 131 S. Ct. 2846, 2851 (2011)) (emphasis added). It is a rare case that a foreign defendant would be found "essentially at home" and, therefore, subject to the general jurisdiction of a forum state, and this is certainly not that case.

There are no facts that would support a finding of general jurisdiction over these defendants in the State of Florida. The more appropriate inquiry is whether these defendants have in-state activities in the State of Florida connected to this litigation that would give rise to this Court's exercise of specific jurisdiction over them.

    **2.    Plaintiff Has Not Established Specific Jurisdiction Over Defendants.**

        **a. Long-Arm Statute Analysis**

A nonresident defendant is amenable to suit in Florida, pursuant to the long-arm statute, only if the defendant submits to the jurisdiction of the courts in this state by committing an act specifically enumerated in section 48.193(1)(a). This inquiry is severely hampered because the

"grounds for jurisdiction" do not "appear" in the complaint. Venetian Salami Co., supra, 554 So. 2d at 502. Plaintiff does not allege that any of the defendants are Florida residents or entities—none are. Plaintiff does not allege any actionable conduct that took place in Florida—none has. Plaintiff does not allege that any of the defendants are engaged in business activities in this state—they are not. Plaintiff does not allege that a contract was breached in Florida—none exists. Put simply, there is not a single identifiable allegation that would meet any of the specifically enumerated sections of Florida's long-arm statute.

More telling than what plaintiff failed to allege is what plaintiff did allege. In the first sentence of the complaint, plaintiff claims he "will prove that[] the above named parties routinely engage as associates-in-fact and illegally remove thousands of dollars from the citizens of New Jersey." Complaint, at page 1 (emphasis in original). In the vein of a New Jersey divorce proceeding, plaintiff complains of conduct by: New Jersey attorneys; a New Jersey Superior Court Judge (Judge DeMarzo); a New Jersey "Custody Evaluator"; a New Jersey real estate appraiser; and a New Jersey business appraiser. The "marital residence," as evidenced by Exhibit D to the complaint, was located at 18 Highland Dr., Washington Township, New Jersey, 07853. Even more, plaintiff "firmly believe[s] that *more money is stolen from the citizens of Morris County, New Jersey* from within the walls of the Superior Court . . . ." Id. at page 3 (emphasis added). Among the relief plaintiff seeks is "the entire Civil Law component of NJ Law looked at for anti-trust [sic] acts[,]" "a failsafe method devised to protect New Jersey consumers in the future[,]" and an investigation of "the knowledge of New Jersey Superior Court Judges DeMarzo, Rand and Ramsey[.]" This entire lawsuit (assuming there is a stated claim for relief) centers on events that occurred in New Jersey, by actors in the State of New Jersey, causing alleged harm in the State of New Jersey.

12

The only conceivable section of Florida's specific jurisdiction long-arm statute that could apply to these facts is § 48.193(1)(a)(6),[2] which permits the exercise of jurisdiction over a foreign defendant if the cause of action arises from an act:

> Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> a. The defendant was engaged in solicitation or service activities within this state;
>
> **or**
>
> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(emphasis added). These defendants do not practice law in Florida; they do not engage in "solicitation" of Florida clients; and they do not manufacture or process any products whatsoever, let alone to be used or consumed in the State of Florida. See Exhibit 1, ¶¶ 2, 3; Exhibit 2, ¶¶ 2, 3. Neither of these requirements are satisfied by the allegations of the complaint, or the record evidence. See, e.g., Walack v. Worldwide Mach. Sales, Inc., 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003). Rather, these defendants are New Jersey attorneys practicing law

---

[2] The subsection that addresses marriage dissolution proceedings is not applicable, because the action is not against his former spouse, but against the lawyers that represented his former spouse, and therefore cannot be considered a claim for "alimony [or] child support." See Fla. Stat. § 49.193(1)(a)(5), Moreover, plaintiff and his former spouse did not own any marital property in the State of Florida, nor did the former spouse (who is not a named defendant, which would also seem to be a requirement) reside in the State of Florida prior to commencement of the New Jersey divorce proceeding. Id. The subsection that permits the exercise of jurisdiction over a foreign defendant that commits a tortious act in the State of Florida is equally unavailing. See Fla. Stat. § 49.193(1)(a)(2). These defendants represented only plaintiff's former spouse, and there is no allegation that these out-of-state lawyers committed any tort, albeit legal malpractice or something else, against this plaintiff in Florida. See, e.g., Hirsch v. Weitz, 16 So. 3d 148, 151-52 (Fla. 4th DCA 2009) (reversing trial court because the out of state attorney was not subject to personal jurisdiction in the State of Florida under this section, despite the fact that the defendant provided legal advice to the plaintiff while the plaintiff resided in Florida, because "the alleged acts of legal malpractice . . . did not cause [plaintiff] to be injured in Florida . . .") (citing Korman v. Kent, 821 So. 2d 408, 411 (Fla. 4th DCA 2002)).

"solely" in the State of New Jersey. Id. Even the most liberal reading of the complaint cannot establish any causal connection with the State of Florida sufficient to satisfy the Florida long-arm statute in this case.

   b. **Due Process Analysis**

Even assuming, *arguendo*, that plaintiff satisfied his burden of alleging sufficient jurisdictional facts, and that plaintiff satisfied his burden of establishing jurisdiction under the Florida long-arm statute, the Court's assertion of jurisdiction over defendants would not comport with "traditional notions of fair play and substantial justice" because defendants do not have connections with the forum state arising out of the actions alleged. Madara v. Hall, 916 F.2d 1510, 1519 (11th Cir. 1990). The Fourteenth Amendment prohibits the exercise of personal jurisdiction over a nonresident defendant unless the defendant "purposefully directed" its activities at residents of the forum state, and the litigation results from alleged injuries that "arise out of or relate to" those activities. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). On this issue, the Supreme Court's holding in Hanson v. Denckla, 357 U.S. 235, 253 (1958) is more than instructive, it is directly on point and it demands dismissal of this case.[3]

---

[3] Even if the Court were to apply the "effects test" to analyze whether these defendants have "minimum contacts" with the State of Florida, the plaintiff cannot show that these defendants: (1) committed an intentional tort; and (2) that was directly aimed at the forum; and which (3) caused an injury within the forum the defendant should have reasonably anticipated. Licciardello v. Lovelady, 544 F.3d 1280, 1286 (11th Cir. 2008);. see also Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1220 at n.28 (11th Cir. 2009) (*citing* Calder v. Jones, 465 U.S. 783 (1984)). Defendants' representation of plaintiff's ex-wife in New Jersey cannot be considered an "intentional tort" directly aimed at the State of Florida. There is no connection between that divorce (and any harm plaintiff alleges he suffered as a result) and the State of Florida. Similarly, there was no "injury within the forum" (or any injury at all) that defendants could have anticipated. The "effects test" is, therefore, not satisfied. Rather, plaintiff's unilateral decision to relocate to Florida towards the end of his divorce places this case squarely within the holding of Hanson v. Denckla, and defendants would have had no reason to believe they could

The controversy in Hanson involved the legal right to the corpus of a trust established in Delaware by a Pennsylvania citizen, who appointed a trust company in Delaware to act as trustee. Id. at 238. Several years later, the settlor of the trust moved to Florida where she ultimately passed away, and where her will was admitted to probate. Id. at 239. The Supreme Court had to decide whether a Florida court had jurisdiction over the nonresident defendants, namely the Delaware trust company (the trustee), such that the proceeds of the trust could be distributed to the surviving beneficiaries. The Court noted that the Delaware trust company did not have an office in Florida, the trust company did not transact business in Florida, the trust assets were never held or administered in Florida, and there was no evidence of record that the trust company solicited business in Florida. Id. at 251. The only contact with the State of Florida was the settlor's unilateral decision to move to Florida where the trustee continued to remit the trust income. Id. at 252. In holding that the Florida court could not exercise personal jurisdiction over the trustee, the Court reasoned that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Id. at 253.

In this case, the only connection these defendants have with the State of Florida is the attenuated contact with the plaintiff as the now ex-husband of the defendant's client during a New Jersey divorce proceeding. That plaintiff unilaterally decided to move to Florida during the divorce proceedings is of no consequence, because the defendants are not licensed to practice law in Florida, the defendants do not solicit Florida clients, and none of the complained of actions took place in or had any impact on property in the State of Florida. Just as in Hanson, the plaintiff's unilateral decision to move to Florida does not satisfy the requisite contact with the

---

be haled into a Florida court based on anything that transpired during plaintiff's New Jersey divorce.

state to comport with the due process requirements of the Fourteenth Amendment. Accordingly, the Court should dismiss the complaint against the defendants for lack of personal jurisdiction.

### EVEN ASSUMING PERSONAL JURISDICTION EXISTED, FLORIDA IS NOT THE PROPER VENUE FOR THIS ACTION

Defendants have demonstrated that this court cannot and should not exercise personal jurisdiction over them. However, even if such jurisdiction existed, Florida would be an improper venue. Venue in federal courts is governed entirely by statute. Leroy v. Great Western United Corp., 443 U.S. 173, 181 (1979). The venue statutes are generally intended to protect a defendant from being forced to defend in an unfair or inconvenient forum. Id. at 183–84. "The requirement of venue is specific and unambiguous; it is not one of those the principles which, in the interest of some overriding policy, is to be given a liberal construction." Olberding v. Illinois Cent. R.R. Co., 346 U.S. 338, 340 (1953). Where venue is improper, a court must either dismiss under a motion pursuant to Federal Rule of Civil Procedure 12(b)(3), or transfer the matter to a proper venue under 28 U.S.C. §1404.

A court may transfer an action for the convenience of the parties and witnesses and in the interest of justice to any district where the action might have been brought initially. 28 U.S.C. §1404(a); In re Ricoh Corp., 870 F.2d 570 (11th Cir. 1989). The function of Section 1404(a) is "to prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (*quoting* Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27 (1960)). The determination of whether the circumstances warrant transfer under § 1404(a) is "peculiarly one for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation." Roofing and Sheet Metal Servs. v. La Quinta Motor Inn, 689 F.2d 982 (11th Cir. 1982) (*quoting* Time, Inc. v. Manning, 366 F.2d 690, 699 (5th Cir. 1966)). "Accordingly, the

decision whether to transfer a case is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion." Id.

Here, none of the "events or omissions giving rise to the claim" occurred in Florida nor do they have any connection to Florida. Other than plaintiff, none of the parties reside or are located in Florida. The action does not concern any real property in Florida, and there are no witnesses in Florida. In fact, the thrust of plaintiff's meritless complaint is that the citizens of Morris County, New Jersey have been victimized by evil New Jersey lawyers along with rogue New Jersey judges. Thus, if the court is not inclined to dismiss this action based on the absence of personal jurisdiction, it should be dismissed or transferred to the District of New Jersey, where venue would be appropriate to address plaintiff's allegations regarding the New Jersey court system.

## **CONCLUSION**

For all of the foregoing reasons, defendants, Candace R. Scott, Esq., Denis A. Wennogle, Esq., Scott & Daly, LLC, and Candace Scott, LLC, respectfully request that the Court dismiss plaintiff's Complaint with prejudice.

    Respectfully submitted,

    /s/ Jason P. Stearns _____
    Lawrence P. Ingram
    Florida Bar No. 855510
    Jason P. Stearns
    Florida Bar No. 059550
    PHELPS DUNBAR LLP
    100 S. Ashley Drive, Suite 1900
    Tampa, FL 33602
    T: 813-472-7550
    F: 813-472-7570
    ingraml@phelps.com
    stearnsj@phelps.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was been electronically filed via the CM/ECF system which will send a notice of electronic filing to counsel of record; and that a true and correct copy of the foregoing has been furnished by U.S. Mail to Robert C. Courboin, 4835 Musket Drive, Lakeland, FL 33810, on this 3rd day of February, 2014.

/s/   Jason P. Stearns  
Attorney